NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-155

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 109404

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe (Doe), appeals from a Superior Court judgment affirming the Sex Offender Registry Board's (board) classification of Doe as a level two sex offender.  Doe argues that the hearing examiner did not adequately explain why a level two classification was warranted and erred by ordering internet publication of Doe's registry information.  We affirm.

Background.  In October 2003 a thirteen year old girl (victim) reported to police that Doe had been sexually abusing her for several years.  Doe was then thirty-three years old and the boyfriend of the victim's mother.  The victim disclosed that, beginning when she was nine years old, Doe vaginally raped her approximately fifty times.  On other occasions Doe forced

the victim to perform fellatio on him until he ejaculated.  Doe threatened the victim that he would kill her and her mother if she told anyone.

Based on his abuse of the victim, the plaintiff pleaded guilty in May 2005 to nine counts of forcible rape of a child and five counts of indecent assault and battery on a child.  He also pleaded guilty to related charges of witness intimidation, violating an abuse prevention order, and threatening to commit a crime.  He received concurrent sentences of ten to twelve years in State prison.

In November 2012, as Doe's release was approaching, the board notified him of its preliminary recommendation that he register as a level three sex offender.  Doe did not challenge that recommendation, and it became the final decision of the board.  About ten years later, Doe filed a request for reclassification.  After the board issued a preliminary recommendation that Doe be reclassified as a level two sex offender, Doe challenged that recommendation through a de novo hearing.  Following the hearing, held in March 2023, the hearing examiner found that Doe presented a moderate risk to reoffend and a moderate degree of dangerousness and ordered him to register as a level two sex offender.  On judicial review under G. L. c. 30A, a Superior Court judge affirmed.

2

Discussion. 1. Adequacy of findings. Doe argues that the case must be remanded to the board because the hearing examiner failed to adequately explain how he balanced the regulatory factors in reaching his decision. We are unpersuaded.[1]

Considering the hearing examiner's analysis in its totality, we are satisfied that "the classification [was] based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex." Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012). The hearing examiner applied two statutory high-risk factors with increased weight: factor 2 (repetitive and compulsive behavior) and factor 3 (adult offender with child victim). The hearing examiner explained that factor 2 applied with increased weight because, despite being charged with indecent assault and battery in 1997, Doe went on to commit the sex offenses against the victim. The hearing examiner further explained that factor 3 applied with increased weight because the victim was prepubescent when the abuse began. Doe does not claim that the

---

[1] Because we conclude that Doe's argument fails on its merits, we need not address whether Doe waived the argument by failing to raise it in the Superior Court. Doe has, however, waived any argument that the hearing examiner's decision was unsupported by substantial evidence because he makes that assertion in conclusory fashion, which does not allow for meaningful appellate review. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

hearing examiner erred in applying these high-risk factors, which are "indicative of a high risk of reoffense and degree of dangerousness posed to the public."  G. L. c. 6, § 178K (1) (a).

The hearing examiner also applied several risk-elevating factors based on Doe's extensive criminal history, threats to use violence against the victim and her mother, long history of violent offenses, pattern of hostility toward women, use of a high degree of physical contact during the sex offenses against the victim, noncompliance with community supervision, and less than satisfactory participation in sex offender treatment.[2] Demonstrating that he paid close attention to the evidence, the hearing examiner explained how much weight he gave each factor and why.  For example, the hearing examiner stated that he gave minimal weight to Doe's noncompliance with community supervision because his one probation violation was "remote in time."  On the other side of the balance, the hearing examiner found applicable the following risk-mitigating factors with varying weight:  offense-free time in the community, advanced age, home situation and support systems, and stability in the community.

In the end the hearing examiner concluded that the risk-mitigating factors warranted a reduction in Doe's

_____

[2] While Doe claims that the hearing examiner erred by not considering recent studies about the efficacy of sex offender treatment, he concedes that he did not submit any such studies for the hearing examiner to consider.

4

classification, but that Doe still presented a moderate risk to reoffend and moderate degree of dangerousness.  This conclusion was well supported by the evidence and did not result from a "checklist" approach, as Doe contends.  The hearing examiner explained that Doe's sex offenses, criminal history, tendency toward violence, and hostility toward women showed "[a]ntisocial orientation and sexual deviance," which "are the strongest predictors of sexual recidivism for all sex offenders." Furthermore, the hearing examiner noted that, while Doe had obtained some stability in the community, he "continued to accrue criminal charges," including for violating a restraining order in 2017 after his release from incarceration.  We are readily able to discern from the hearing examiner's rationale why he concluded on these facts that Doe presented a moderate risk of reoffense and moderate degree of dangerousness.  Remand is therefore unnecessary.  See 803 Code Mass. Regs. § 1.33 (2016) ("The final classification level is . . . based . . . on a qualitative analysis of the individual sex offender's history and personal circumstances").

2.  Internet dissemination.  Prior to ordering Internet dissemination, a hearing examiner must make a separate finding that public access to the offender's registry information is in the interest of public safety.  See Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 655-

5

56 (2019) (<u>Doe No. 496501</u>). Doe argues that the hearing examiner's finding here is unsupported by substantial evidence because the hearing examiner did not mention "Doe's longstanding relationship with his live-in girlfriend,"[3] which Doe says is relevant to his "current access to his preferred victim pool." Again, we are unpersuaded.

Doe's reliance on <u>Doe, Sex Offender Registry Bd. No. 524553</u> v. <u>Sex Offender Registry Bd</u>., 98 Mass. App. Ct. 525 (2020), is misplaced. There, "the examiner did not make explicit findings regarding the need for Internet dissemination, or consider that issue in his analysis of the regulatory factors," <u>id</u>. at 528, so the question was whether "the underlying facts . . . clearly dictate[d] [that] Internet dissemination [was] warranted" (quotations omitted). <u>Id</u>. at 529. Here, in contrast, the hearing examiner expressly found that "a public safety interest is served by public and Internet access to [Doe's] sex offender registry information." In support the hearing examiner cited the evidence of Doe's sexual deviance, noting that Doe "demonstrated that he is capable of repeated sexual offending with a high level of physical contact over a period of years." The hearing examiner then concluded that, should Doe reoffend, "it would likely be against a similar child with whom he has

---

[3] Doe's girlfriend is the victim's mother, with whom Doe resumed a relationship after he was released from incarceration.

6

access through a woman he might date or through extended family" and "[w]omen and guardians of such children should have access to [Doe's] registry information so that they may be able to take steps to protect themselves and their children."  Substantial evidence supports this conclusion.  See Doe No. 496501, 482 Mass. at 655 ("Where a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area").

Judgment affirmed.

By the Court (Meade, Shin & Tan, JJ.[4]),

Clerk

Entered:  June 4, 2025.

---

[4] The panelists are listed in order of seniority.